UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILFREDO RODRIGUEZ MANZANO,[1]

Petitioner,

v. Case No. 3:26-cv-1313-MMH-PDB

WARDEN, NORTH FLORIDA DETENTION CENTER and U.S. ATTORNEY GENERAL,

Respondents.

# ORDER

## I. Status

Petitioner Wilfredo Rodriguez Manzano, an immigration detainee, initiated this action by filing a pro se Petition for a Writ of Habeas Corpus (Doc. 1) on May 19, 2026. Manzano, a citizen of Cuba, was paroled into the United States on November 15, 1995. Doc. 7-1 at 2. On May 6, 1999, an immigration judge ordered Manzano removed to Cuba. Id. United States Immigration and Customs Enforcement (ICE) detained Manzano from May 6, 1999, to February 1, 2000, at which time he was released on an Order of Supervision (OSUP). Doc. 7-2 at 1. ICE again detained Manzano from September 3, 2002, to

[1] The Clerk is directed to change Petitioner's last name to "Manzano" on the docket.

December 24, 2002. Id. Most recently, on December 14, 2025, local law enforcement arrested Manzano for aggravated battery. Doc. 7-1 at 2. On January 14, 2026, Manzano was transferred into ICE custody. Doc. 7-2 at 1. ICE revoked Manzano's OSUP on June 11, 2025. Doc. 7-4 at 1–2.

The Federal Respondent filed a Response to Petition for Writ of Habeas Corpus (Doc. 7) with exhibits (Docs. 7-1 through 7-5). Manzano filed a Reply (Doc. 9). This case is ripe for review.

## II. Analysis

In his Petition, Manzano argues that he is entitled to release under Zadvydas v. Davis, 533 U.S. 678 (2001), because he has been detained beyond the presumptively reasonable removal period and there is no significant likelihood of removal in the reasonably foreseeable future. Doc. 1 at 6–8. Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. See Johnson v. Guzman Chavez, 594 U.S. 523, 543–44 (2021) ("And § 1231 explains what to do if the alien is ordered removed."); see also Deshati v. Noem, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025)[2] ("The statute governing post-final order of removal immigration detention is 8

[2] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

U.S.C. § 1231."). Pursuant to 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2).

Nevertheless, in Zadvydas, 533 U.S. at 690, the Supreme Court held that indefinite detention of aliens raises serious constitutional concerns. Once an order of removal is final, ICE should make every effort to remove the alien within a reasonable time. Id. at 701. The government may detain an alien beyond the statutory removal period if he is, among other things, a criminal alien or the Attorney General has determined the alien is a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6). The Supreme Court in Zadvydas held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. Id. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter." Akinwale v. Ashcroft, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed and the alien "'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,'" the burden then shifts to the Government to provide evidence sufficient to rebut that showing. Id. at 1052 (quoting

Zadvydas, 533 U.S. at 701). Thus, "in order to state a claim under Zadvydas the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id. If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a significant likelihood of removal in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701.

Here, the Court first considers whether the presumptively reasonable six-month period has expired. Courts have used various methods to calculate the six-month period. Some courts have considered in the aggregate all periods of detention following an order of removal, regardless of whether the periods of detention were consecutive. See Jaranow v. Bondi, 819 F. Supp. 3d 1229, 1236 (W.D. Wash. 2026) (collecting cases from the Ninth Circuit that "have found that the six-month period of detention need not be consecutive to reach the limit established in Zadvydas"); Patel v. Bondi, No. CV 25-16218 (KMW), 2025 WL 3294353, at *2 (D.N.J. Nov. 26, 2025) (finding that the court must "consider the entire period of [the p]etitioner's detention"—not just the current length of detention). Other courts have not—instead they have determined that each period of detention restarts the removal-period clock. See Barrios v.

Ripa, No. 1:25-cv-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) (rejecting a petitioner's argument "that his detention should be counted in the aggregate based upon his prior detentions," because doing so would raise constitutional concerns to "any subsequent period of detention, even one day," "[a]nd adjudicating the constitutionality of every re-detention would obstruct an area that is in the discretion of the Attorney General—effectuating removals"); Liu v. Carter, No. 25-3036-JWL, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025) ("[T]he removal-period clock restarts when an alien subject to a removal order is again detained by ICE."). Still other courts appear to have determined that the presumptively reasonable six-month period includes the 90-day statutory removal period and the 90-days immediately thereafter and expires once that time has run. See Beltran v. Ripa, No. 2:25-cv-01174-SPC-NPM, 2026 WL 21252, at *2 (M.D. Fla. Jan. 5, 2026).

The Federal Respondent contends that the authority to detain Manzano remains within the presumptively reasonable six-month period because, considering only Manzano's most recent detention, as of the date of the filing of the Petition, ICE had detained Manzano for approximately 125 days. Doc. 7 at 12. The Court is not persuaded that the presumptively reasonable period of detention restarts with each new detention in every circumstance. Instead, the Court finds that once an individual has been detained for more than six

consecutive months after his final order of removal is entered, he has met the first prong of the Zadvydas test. Here, ICE previously detained Manzano for nearly one year—between May 6, 1999, to February 1, 2000. Doc. 7-2 at 1. As such, Manzano has already been detained beyond the presumptively reasonable six-month period.

Nevertheless, the Federal Respondent contends that the six-month period is tolled because Manzano refused to comply with ICE's attempts to remove him to Mexico. Doc. 7 at 7. In support of its contention, the Federal Respondent submits the declaration of a deportation officer who states:

> 5. The respondent [(Manzano)] was nominated for third country removal to Mexico (3rd Country Removal) on January 22, 2026, via the Southwest border, which he refused. There is an entry in EARM[[3]] from March 23, 2-26, showing RODRIGUEZ-Manzano failed to comply with removal efforts on 3/23/26—shows Failure to Cooperate with Travel Document request.
>
> . . . .
>
> 9. On April 6, 2026, RODRIGUEZ-Manzano was nominated again for a Notice of Removal to Mexico. It appears (in EARM) he refused to comply again by not signing the Notice of Removal on the flight and was pulled off the flight last minute.

Doc. 7-3 at 2–3.

[3] The Federal Respondent does not define this term.

Section 1231(a)(1)(C) explicitly provides for an extension of the removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). When addressing a Zadvydas claim, courts have applied § 1231(a)(1)(C) differently:

> Many courts conduct an analysis using the burden-shifting framework from Zadvydas, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under Zadvydas altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the Zadvydas standard.

Glushchenko v. U.S. Dep't of Homeland Sec., 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (footnotes omitted). The Eleventh Circuit Court of Appeals has recognized that the six-month period may be tolled if the alien "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." Akinwale, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C),

then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" Singh v. U.S. Att'y Gen., 945 F.3d 1310, 1314 (11th Cir. 2019) (quoting Pelich v. Immigr. & Naturalization Serv., 329 F.3d 1057, 1060 (9th Cir. 2003)); see Vaz v. Skinner, 634 F. App'x 778, 782 (11th Cir. 2015)[4] ("Because Petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS and voluntarily signs for the travel document."); Oladokun v. U.S. Att'y Gen., 479 F. App'x 895, 897 (11th Cir. 2012) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future,'" because his "non-cooperation is the only barrier to his removal." (quoting Zadvydas, 533 U.S. at 701).

The Federal Respondent has not shown that Manzano's actions on January 22, 2026, and April 6, 2026, were akin to a "refus[als] to make timely

[4] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. Gov't Emps. Ins. Co., 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

application in good faith for travel or other documents necessary" for his removal or that his actions otherwise prevented his removal. 8 U.S.C. § 1231(a)(1)(C). First, the deportation officer's description of the events on January 22, 2026, is vague. While the deportation officer asserts that Manzano "refused" a nomination for third country removal, Doc. 7-3 at 2, it is unclear what form that refusal took.[5] As to Manzano's refusal to sign the Notice of Removal on April 6, 2026, it appears that the document is a notice to Manzano, not an application for travel documents or a form that would otherwise appear to assist in his removal. Without more, the Court cannot find that Manzano's actions warrant tolling of the six-month period as urged by the Federal Respondent. And, in any event, there was effectively no time left in Manzano's six-month period to toll on either January 22, 2026, or April 6, 2026, because that period expired in 2000, during his first detention. Therefore, the Court finds Manzano's six-month period expired prior to the filing of this case.

The Court also finds that Manzano has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Indeed, Manzano has now been detained over seven months, but ICE has yet to remove him. He also contends that there is no repatriation

---

[5] Considering the deportation officer's use of the word "again" in paragraph 9 of the declaration, Manzano likely refused to sign a Notice of Removal to Mexico on January 22, 2026. Compare Doc. 7-3 at 2 ¶5 with 3 ¶9.

agreement between Cuba and the United States that would allow ICE to remove him. Doc. 1 at 7. Thus, the burden shifts to the Federal Respondent.

The Court finds that the Federal Respondent has not submitted evidence sufficient to rebut Manzano's showing that there is no significant likelihood of removal in the reasonably foreseeable future. The Federal Respondent points to the deportation officer's declaration, in which he states that ICE intends to remove Manzano to Mexico. Doc. 7-3 at 2. The deportation officer asserts that "[f]light operations has nominated" Manzano "for a flight leaving for the Southwest Border, and bussed [sic] to Mexico scheduled for June 22, 2026." Id. at 3.

The Federal Respondent's evidence is unavailing. It appears ICE has been attempting to remove Manzano to Mexico since January 2026, Doc. 7-3 at 2, but has not succeeded. And although Manzano was "nominated" for a removal flight on June 22, 2026, that date has long passed with Manzano remaining in ICE custody. Moreover, there is no evidence that ICE has attempted to obtain a Mexican travel document for Manzano, that Mexico intends to accept Manzano, or that ICE has communicated with Mexico regarding Manzano at all. Considering the record, the Court finds the Federal Respondent has failed to show that there is a significant likelihood Manzano will be removed in the reasonably foreseeable future. Moreover, the Federal

Respondent does not contend that Manzano is a risk to the community or unlikely to comply with the order of removal. Therefore, Manzano is entitled to release from detention under Zadvydas.

Accordingly, it is **ORDERED**:

1. Manzano's Petition for a Writ of Habeas Corpus (Doc. 1) is **GRANTED**. Respondents shall release Manzano **within 24 hours** of this Order. At least **five (5) hours** before releasing Manzano, Respondents shall provide Manzano with access to a telephone to arrange transportation from the detention facility. Manzano shall be subject to his preexisting OSUP.

2. Respondent Warden's Motion to Dismiss (Doc. 8) is **DENIED**. See, e.g., Fonseca v. Ripa, No. 3:26-CV-309-MMH-MCR, 2026 WL 1072778, *4–5 (M.D. Fla. Apr. 21, 2026).

3. The **Clerk** is directed to terminate any motions, enter judgment granting the Petition, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of August, 2026.

Marcia Morales Howard

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 8/27
c:
Wilfredo Rodriguez Manzano, #A074129125
Counsel of record